# IN THE COURT OF APPEALS OF IOWA

No. 16-1222
Filed February 7, 2018

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**ORLANDO NAFTALI RAMIREZ-RUIZ,**
     Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer, Judge.

A defendant challenges his convictions for sexual abuse in the third degree and enticing a minor. **AFFIRMED.**

Matthew C. Moore of The Law Offices of Matthew C. Moore, PLLC, Chariton, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

A jury convicted Orlando Ramirez-Ruiz of sexual abuse in the third degree and enticing a minor after hearing evidence that—at age twenty-five—he picked up a thirteen-year-old girl from her middle school, took her to the Motel 6, undressed, and committed a sex act with her. On appeal, Ramirez-Ruiz challenges the sufficiency and weight of the evidence, the admission of hearsay evidence, and his trial counsel's performance.

Viewing the evidence in the light most favorable to the State, we find ample evidence to affirm the verdicts. In addition, we see no abuse of discretion in the district court's determination the greater weight of credible evidence supported the verdicts. We also believe the district court properly allowed a nurse practitioner to testify to a statement made by the girl during the course of a sexual-assault examination. Finally, we conclude Ramirez-Ruiz fails to show he was prejudiced by his attorney's decision not to object to an exhibit of translated text messages.

## I.     Facts and Prior Proceedings

When she was in seventh grade, A.M. started communicating with Ramirez-Ruiz through Facebook. They developed a friendly on-line relationship but did not meet in person that year. Then in September of her eighth-grade year, Ramirez-Ruiz picked A.M. up at school—telling the office secretary he had permission to take her to a medical appointment.[1] Ramirez-Ruiz instead took her for breakfast at Casey's General Store, drove around for an hour, and ended up at the Motel 6 in Waterloo. Ramirez-Ruiz checked in, telling the clerk he only needed the room

---

[1] The State offered video footage from the school's security cameras showing Ramirez-Ruiz and A.M. together.

for a couple of hours. Once inside the motel room, A.M.—who had a "crush" on Ramirez-Ruiz—took off her school uniform. A.M. testified Ramirez-Ruiz's boxers were pulled down. She also reluctantly testified that "the tip of his penis touched [her] vagina." After they left the motel, Ramirez-Ruiz took A.M. to lunch at Subway, stopped by a park, and returned her to school in time to catch the bus home.

The next day, A.M.'s parents learned of her absence from school and her encounter with Ramirez-Ruiz. Posing as A.M., they sent text messages to him. Ramirez-Ruiz sent back messages telling A.M.: "Never say anything about what we did. . . . You know, in the hotel." A.M.'s parents contacted police. Officers interviewed Ramirez-Ruiz, who admitted spending the day with A.M., but denied having sex with the middle schooler. From a holding room at the police station, Ramirez-Ruiz called A.M.'s mother, pleading with her to not press charges, offering to pay the family, and proposing that he marry A.M.

As part of the investigation, A.M. met with a nurse practitioner at the Allen Hospital's Child Protection Center. A.M. acknowledged telling the nurse practitioner that when Ramirez-Ruiz put his penis into her vagina it "hurt." A.M. also had a sexual-assault examination. A.M. testified that the nurse who performed the physical exam "knew I had sex with someone." During the colposcopic exam, the nurse observed two areas of redness on A.M.'s hymen, as well as petechia caused by bleeding beneath the skin. The nurse testified the redness and petechia "could be due to trauma." The nurse told the jury "given the history of what she had told me had occurred, given the basis of what was found on examination, it could have been from sexual assault." Because the redness

was gone by the time of A.M.'s follow-up visit, the nurse concluded it was the result of "some type of blunt-force trauma."

Officers collected the underpants A.M. had been wearing at the motel. A state criminalist detected seminal fluid on the underpants; tests of the sperm fraction indicated the presence of DNA from at least two individuals. According to the criminalist, one contributor to the DNA mixture was A.M. and the second profile was consistent with the DNA of Ramirez-Ruiz.

The State charged Ramirez-Ruiz with sexual abuse in the third degree, a class "C" felony, in violation of Iowa Code section 709.4(2)(b) (2014), and enticing a minor, a class "D" felony, in violation of Iowa Code section 710.10. After a three-day trial, the jury convicted Ramirez-Ruiz on both counts. The district court sentenced him to concurrent terms not to exceed of ten years and five years. Ramirez-Ruiz now appeals.

## II.     Scope and Standards of Review

The various claims raised on appeal call for different reviewing standards. When considering the district court's ruling on Ramirez-Ruiz's motion for judgment of acquittal and hearsay objection, we review for correction of legal error. *See State v. Smith*, 876 N.W.2d 180, 184 (Iowa 2016) (explaining whether a particular statement constitutes hearsay presents a legal issue, leaving the district court without discretion whether to admit or deny its admission); *State v. Bash*, 670 N.W.2d 135, 137 (Iowa 2003) (upholding jury's verdict if it is supported by substantial evidence). We employ an abuse-of-discretion standard when considering the district court's ruling on the motion for new trial based on the weight of the evidence. *See State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013). We

review de novo the claim of ineffective assistance of counsel. *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017).

### III. Analysis of Appellate Claims

### A. Sufficiency and Weight of the Evidence

Ramirez-Ruiz challenges both the sufficiency and the weight of the State's evidence for both his crimes. On the sufficiency question,[2] we assess the record in the light most favorable to the State, including all reasonable inferences that we may fairly draw from the evidence. *State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016). We will uphold the jury's verdicts if they are supported by substantial evidence. *Id.* Evidence is substantial when a reasonable jury could rely on it to find the defendant guilty beyond a reasonable doubt. *Id.* Evidence is not substantial if it raises only suspicion, speculation, or conjecture. *Id.*

On the alternative claim challenging the weight of the evidence, we must grant a new trial if the jury's verdicts are contrary to law or evidence. Iowa R. Crim. P. 2.24(2)(b)(6). A verdict is contrary to evidence when it is against the greater weight of the evidence presented at trial. *State v. Taylor*, 689 N.W.2d 116, 133–34 (Iowa 2004). Unlike the sufficiency standard, where the district court must approach the evidence from a standpoint most favorable to the State and assume the truth of the prosecution's case, the weight-of-the-evidence standard allows the

---

[2] The State contends the motion for judgment of acquittal made on behalf of Ramirez-Ruiz was too generic to preserve error on the claims he raises on appeal. *See State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996). We agree the defense motion was non-specific, but because the trial prosecutor thoroughly discussed all elements of the offenses for the benefit of the district court, we opt to reach the merits of the substantial-evidence claim on appeal. *See generally Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) (finding error was preserved where district court considered issue raised on appeal).

court to balance the evidence and consider the credibility of witnesses. *Id.* at 134. In deciding whether to grant a new trial on this ground, the district court enjoys wide discretion, but it must exercise that discretion carefully and sparingly. *Id.* We will discuss each distinct claim for both convictions.

### 1. Sexual Abuse in the Third Degree

To convict Ramirez-Ruiz of third-degree sexual abuse, the jury had to find beyond a reasonable doubt that the State's proof satisfied the following elements:

> 1. On or about September 18, 2014, the defendant performed a sex act with [A.M.]
> 2. The defendant performed the sex act while [A.M.] was under the age of 14 years.
> 3. The defendant and [A.M.] were not then living together as husband and wife.

Only the first element is contested. Both at trial and on appeal, Ramirez-Ruiz paints A.M. as the aggressor in their sexual encounter. Testifying in his own defense, Ramirez-Ruiz told the jury: "She was the one who wanted to have sexual relationships." In his appellant brief, he contends the State did not offer substantial evidence to persuade the jury he performed a sex act because A.M. "maintains the only possible physical contact between her and Mr. Ramirez-Ruiz was forcibly caused by her."

The jury was entitled to reject this "Lolita" defense.[3] *See State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006) (explaining juries are free to credit some

---

[3] Vladimir Nabokov's Lolita is the story of an illegal relationship between an adult, Humbert, and a twelve year old girl, Lolita. In his defense, Humbert does not deny having had a sexual relationship with Lolita, but instead pleads that 'it was she who seduced me.' Humbert's claim that Lolita initiated their sexual relationship has a familiar ring; it is a defense frequently asserted by adult men charged with statutory rape. Britton Guerrina, *Mitigating Punishment for Statutory Rape*, 65 U. Chi. L. Rev. 1251, 1251 (1998).

testimony and to disbelieve other evidence). It is true that at trial A.M. testified "he didn't want to have intercourse with me, I was trying to get him to actually have intercourse." But because of her young age, whether A.M. "consented" to the sex act was not relevant. *See State v. Willet*, 305 N.W.2d 454, 456 (Iowa 1981) (explaining in a statutory rape case "whether force or a lack of consent is present is immaterial"). In addition, the State offered evidence from an experienced forensic interviewer that children who have an attachment to their abuser sometimes minimize what happened. Here, A.M. begrudgingly testified that Ramirez-Ruiz's penis came into contact with her vagina. She also acknowledged that during her physical examination she said the contact was painful. The examining nurse corroborated that the girl's hymen showed signs of blunt-force trauma. The State also offered testimony from a state criminalist who found seminal fluid on A.M.'s underpants; Ramirez-Ruiz was one of the possible contributors to the DNA profile developed from that sample. When considered in its totality, the State offered ample evidence to support the jury's verdict.

As to the weight of the evidence, we find no abuse of discretion in the district court's denial of a new trial. *See Taylor*, 689 N.W.2d at 134 (discussing limited appellate review). Ramirez-Ruiz contends A.M.'s testimony was "inconsistent with the conclusions advanced by the State." In doing so, he does not question her credibility; in fact, he highlights that her testimony supports his story that he rejected her sexual advances. When deciding a new trial motion, it is important not to lessen the role of the jury as the principal trier of fact. *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). Here, the district court aptly decided the verdict did not weigh heavily against the credible evidence.

Accordingly, we uphold the district court's rulings on both the sufficiency and the weight of the evidence supporting Ramirez-Ruiz's conviction for sexual abuse in the third degree.

**2.    Enticing A Minor**

To convict Ramirez-Ruiz of enticing a minor, the jury had to find beyond a reasonable doubt that the State's evidence satisfied the following elements:

> 1. On or about September 18, 2014, the defendant enticed [A.M.]
> 2. The defendant did so without authority and with the specific intent to commit an illegal sex act upon a minor under the age of 16.
> 3. The defendant committed an overt act evidencing his purpose to entice [A.M.]
> 4. At the time [A.M.] was enticed, the defendant reasonably believed [A.M.] was under 16 years of age.

The jury instructions defined "entice" as "wrongfully invite, tempt, solicit, lure, coax, seduce, or persuade a person to do a thing."

Ramirez-Ruiz contests only the first and second elements. He argues he was deceived into picking up A.M. from school under "false pretenses" and, therefore, he could not have formed the specific intent to commit an illegal sex act with her.

The jury's function was to evaluate the testimony and "place credibility where it belongs." *See State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) (quoting *State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984)). The jury heard A.M. testify that based on her Facebook messaging with Ramirez-Ruiz she believed they had a boyfriend-girlfriend relationship. Rather than taking A.M. to a medical appointment, Ramirez-Ruiz spent $70 to rent a motel room for a few hours. While they were waiting for the motel room, Ramirez-Ruiz asked her to go out again sometime. Once inside the room, they kissed, removed their clothing, and

engaged in sexual intercourse. After the sexual encounter, they went out to lunch and stopped by a park. These events are more consistent with enticing a minor to commit an illegal sex act than being tricked into taking her out of school for a doctor's appointment. The jury was free to reject Ramirez-Ruiz's denial of his intent to commit an illegal sex act with A.M. *See State v. Quinn*, 691 N.W.2d 403, 408 (Iowa 2005) (upholding enticement conviction). The district court did not err in denying his motion for judgment of acquittal and did not abuse its discretion in rejecting his motion for new trial on the enticement offense.

### B. Hearsay Exception

Next we turn to Ramirez-Ruiz's claim that the district court improperly allowed the nurse practitioner to repeat an assertion from A.M. under the hearsay exception at Iowa Rule of Evidence 5.803(4). This exception covers

> [a] statement that (A) [i]s made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) [d]escribes medical history, past or present symptoms or sensations, or the inception or general cause of symptoms or sensations.

Iowa R. Evid. 5.803(4).

During a pretrial conference, the State brought this evidentiary issue to the district court's attention:

> [PROSECUTOR]: . . . The nurse at the Child Protection Center who examined the victim, when asking why she was there and what happened, the victim did identify who she was accusing of abuse, and she did specifically state him by name, the defendant. Per the decision in *Trent Smith*,[4] though I don't know if this decision will necessarily apply in this matter, I do think there might be an exception. Just in an abundance of caution, I would like to admonish

---

[4] In March 2016, the supreme court reversed a domestic violence conviction based on the admission of an out-of-court statement by an adult victim identifying Trent Smith as the perpetrator when she was seeking treatment in the emergency room. *State v. Smith*, 876 N.W.2d 180, 189 (Iowa 2016).

the nurse from the Child Protection Center not to specifically identify the defendant as the victim did, referring to that statement that the victim may identify the defendant as the person who abused her.

THE COURT: Any objection to that, [defense counsel] Metcalf?

MR. METCALF: No. We join in that, Judge.

THE COURT: All right. I will agree, [prosecutor] O'Donnell, if you would instruct your witnesses that because such an identification, it appears, wouldn't have been necessary for the purpose of treatment, tell them that they are not to refer to the identification information during their testimony. Does that address your concern?

[PROSECUTOR]: Yes.

During the prosecution's case, the nurse practitioner discussed her physical examination of A.M. and explained why it is important for medical diagnosis and treatment to gather background information from the patient. The following exchange ensued:

Q. What did she state to you about why she was being examined that day?

MR. METCALF: I'll object. I think it's hearsay, Judge. It's offered for the truth of the matter.

THE COURT: Overruled within the parameters set. You may answer the question, ma'am.

A. Okay. [A.M.] mentioned—or she reported to me that she had had sex with someone the previous week.

On appeal, Ramirez-Ruiz argues A.M. was not making the statement that she "had sex with someone the previous week" for the purposes of medical treatment because she was "withholding information" from the nurse practitioner and her parents about her previous sexual partners. Ramirez-Ruiz argues the statement—despite not naming him—implicated him and did so unfairly because A.M. admitted on cross-examination to having had sexual relations with another individual the night before going to the Motel 6. Ramirez-Ruiz also suggests the district court erred in not giving a limiting instruction concerning the hearsay statement, though such an instruction was not requested at trial.

Ramirez-Ruiz's argument is hard to follow. Because the State was careful not to have the nurse practitioner testify that A.M. identified Ramirez-Ruiz as the perpetrator of the sexual abuse, the nurse's testimony did not exceed the bounds of rule 5.803(4). *See Smith*, 876 N.W.2d at 189 (explaining the rule "recognizes there is a difference between the need to know the cause or external source of the injuries—i.e., 'what happened'—and the need to know the identity of the person causing the injuries"). Here, the "what happened" was that A.M. recently had sex with "someone." The State did not take the next step to elicit the identity of the person causing A.M's injuries. The defense was free to argue the trauma to A.M.'s hymen may have been caused by "someone" other than Ramirez-Ruiz. And in fact, defense counsel argued in summation "[t]hey never looked for the other guy."

The district court did not err in permitting the nurse practitioner to testify to A.M.'s statement that she had sex with "someone" as pertinent to medical diagnosis and treatment. Further, even if the hearsay statement had been wrongly admitted, the evidence was not prejudicial because substantially the same evidence was offered elsewhere in the record without objection. *See State v. Wells*, 437 N.W.2d 575, 578 (Iowa 1989). A.M. testified the nurse "knew I had sex with someone."

## C. Ineffective Assistance of Counsel

In his final assignment of error, Ramirez-Ruiz argues his trial attorney was ineffective in not objecting to an exhibit that contained the Spanish-to-English translation of approximately forty text messages exchanged between Ramirez-Ruiz and A.M. or her parents. Ramirez-Ruiz complains the exhibit was "a jumbled, poorly translated summary" of another exhibit containing more than one hundred

text messages extracted from A.M.'s cell phone. He contends his attorney should have objected to a lack of foundation or argued the exhibit's probative value was substantially outweighed by the danger of unfair prejudice and jury confusion under Iowa Rule of Evidence 5.403. Ramirez-Ruiz alleges he suffered prejudice by admission of the evidence because it was "unduly persuasive to the jury" and misrepresented the purported conversations.

To prevail on his ineffective-assistance claim, Ramirez-Ruiz must prove by a preponderance of the evidence that defense counsel breached an essential duty resulting in actual prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). If his proof is wanting on either element, his claim fails. *See State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015). On the prejudice prong, Ramirez-Ruiz must show his attorney's mistake was "so serious as to deprive him of a fair trial." *See id.* (quoting *Strickland*, 466 U.S. at 687). It is not enough to show the mistake could have conceivably influenced the trial's outcome. *Id.* Rather, Ramirez-Ruiz must affirmatively demonstrate but for counsel's omission, there was a reasonable probability he would have been acquitted. *See id.* We often preserve ineffective-assistance-of-counsel claims for postconviction-relief proceedings where the applicant may develop supporting facts. *See id.* at 319. In this case, the record is adequate to resolve the claim.

On appeal, Ramirez-Ruiz lodges general complaints about the text-message exhibit but does not specify which messages were translated incorrectly or how the selected messages influenced the jury's decision. But assuming, without deciding, counsel failed to perform an essential duty in not objecting to the exhibit, we find no resulting prejudice. Had counsel successfully objected to the

exhibit, no reasonable probability existed that the jury would have voted to acquit. The same information about the content of the translated text messages was properly admitted through the testimony of A.M.'s mother. *See State v. Plain*, 898 N.W.2d 801, 813 (Iowa 2017) (finding no prejudice where substantially similar evidence came into the record without objection). Moreover, the State offered strong evidence supporting both offenses, including laboratory testing showing Ramirez-Ruiz's DNA was present in A.M.'s underpants. Counsel's handling of the text-message exhibit was of little consequence. *See Thorndike*, 860 N.W.2d at 323 (finding no prejudice where appellate court's confidence in the jury's verdict is not undermined).

**AFFIRMED.**