CADY, Chief Justice.
In this appeal-from a conviction for domestic abuse assault, we consider whether hearsay statements made to an emergency room nurse and doctor by a victim that identified the perpetrator of the attack were admissible under Iowa Rule of Evidence 5.803(4) as statements made for purposes of medical diagnosis or treatment. The court of appeals found the hearsay statements were properly admitted at the trial. On our review, we conclude there was insufficient foundation to admit, the statements under rule 5.803(4). We affirm the decision of the court of appeals in part and vacate in part, reverse the decision of the district court, and remand for further proceedings.
I. Background Facts and Proceedings.
■ On June 9, 2012, at 1:03 a.m., the Black Hawk County emergency call center received a 911 call from M.D. She gave her address and said, “Just get here,- thank you, please!”' A short time later, M.D.’s mother'called the center on a nonemergen-cy line. She told the phone- operator that M.D. asked her to call the police to report that Trent Smith had threatened M.D. and that M.D. was afraid of him.
Two officers were dispatched to M.D.’s residence. They found M.D. sitting in a car outside the residence with her five-year-old daughter and a dog. The officers checked the residence for intruders and began their investigation by interviewing M.D.
M.D. told-the officers she had been upstairs and after hearing a sound was “hit” *183 by something when going downstairs in the dark to investigate. She also said she lost consciousness after she was kicked in the head.. She told the officers she believed the assailant had entered her residence through a locked door. M.D. eventually identified her assailant as “Trent Daniel,” whom dispatch officers later identified as Trent Smith, 'M.D. said Smith did not live at her residence but had been abusing her for ten years. She mentioned one prior assault- when Smith beat her after he was released from jail following an arrest for domestic abuse.
The officers took M.D. to the emergency room of a local hospital around 2:40 a.m. She was treated by a doctor and a nurse for her injuries. The doctor found M.D. to be “in a moderate amount of distress” and “extremely shaken up.” The nurse asked M.D. to explain what had happened to her. M.D. responded that she was “assaulted by her baby’s daddy around midnight.” She told the nurse that .she had. been kicked in the head and right arm, and she felt that her front teeth were loose. The nurse also pursued several standard screening questions at some point during the evening. Three questions pertained to domestic abuse. In response to these questions, M.D. indicated she. did “feel afraid of/threatened by someone close to me.” She also responded she had “been hurt by someone.” She further agreed that “someone is taking advantage of [her].”
In response to an inquiry by the doctor about how she sustained her injuries, M.D. said she had been assaulted by her child’s father. However, -the doctor did not make any domestic abuse diagnosis or render any treatment for emotional or psychological injuries based on the identity of the perpetrator. The identity of the assailant or the effects of domestic abuse were not mentioned as a part of any treatment or diagnosis. The treatment consisted of radiology testing and other medical care to those areas of the body that had sustained physical injury. The diagnosis by the doctor pertained solely to the physical injuries sustained by M.D. It was limited to a closed head injury, cervical strain, facial contusion, and arm contusions.
M.D. was released from the hospital around 5 a.m. She was prescribed pain and antianxiety medications. The officers took her to the law enforcement center to obtain a written statement. An officer wrote a, statement based on M.D.’s statements earlier in the night, but M.D. refused to acknowledge it with her signature.
Smith was ■ subsequently charged with domestic abuse assault with intent to cause serious injury and domestic abuse assault causing bodily injury, both in violation of Iowa Code section 708.2A(2) (2011), At a pretrial hearing, the State informed the district court that M.D. intended to recant her statements identifying Smith as her assailant. The State further informed the court it intended to prove Smith was the assailant through the státements made by M.D. to the officers and medical personnel. In particular, the State indicated they would offer M.D.’s statements of identification made to the emergency room nurse and doctor under the medical treatment and diagnosis exception to the rule against hearsay. In response, Smith claimed the statements were not part of any medical diagnosis or treatment. The district court ultimately determined, the identification statements were admissible at trial under the medical treatment and diagnosis exception to the rule against hearsay. It also determined M.D.’s statements to police were admissible at trial under, the excited-utterance exception to the rule against hearsay. The State never argued the statements to the nurse and doctor were also admissible as excited utterances, *184 and the district court did not rely on the excited-utterance .exception in admitting them,' ! '
The case proceeded to trial. Law enforcement officers and medical 'personnel at the hospital testified at trial for the State, as well as a domestic abuse expert. The officers and medical providers recalled the statements M.D. made to them the night of the .incident that identified Smith as her assailant. There was no testimony that M.D. was told how the questions related to her treatment or diagnosis, and there was no testimony hów they weré used or needed by medical providers in her treatment or diagnosis. The domestic abuse expert explained the dynamics of domestic abuse, including the control exercised by the perpetrator. M.D. testified for Smith at trial. She said she was injured when- she fell from a trampoline after drinking in excess.
The jury found Smith guilty of domestic abuse assault and domestic abuse assault causing' bodily injury. Following sentencing, Smith appealed. He claimed the district court erred in admitting the hearsay statements made to police and medical personnel.’ He also claimed the district court erred in failing to merge, the two convictions for purposes of sentencing.
We transferred the case to the court of appeals. It found the district court erred by admitting M.D.’s statements to police as excited utterances. However, , it found the district court did not err' in admitting M.D.’s statements made to the nurse and doctor as statements for purposes of medical diagnosis or treatment.* As a result, the court of appeals found- Smith was not prejudiced by the admission of the hearsay statements to police. It merged the convictions and' affirmed the judgment and sentence, for domestic abuse assault causing bodily injury.
- Smith sought, and we granted, further review. The primary claim asserted by Smith is the statements of identity made to .the doctor and nurse were 'inadmissible under the medical treatment and diagnosis exception.- The. State did not seek further review from the decision by the court of appeals -that the statements made to police were not admissible-as excited utterances. Accordingly, that, decision stands as the final determination - on that issue. See State v. Guerrero Cordero, 861 N.W.2d 253, 258 (Iowa 2015) (addressing on further review only one .of four issues raised on appeal).
II. Scope of Review.
Although we normally review evidence-admission decisions ; by the district court for an abuse of discretion, we review hearsay claims for correction of errors at law. State v. Paredes, 775 N.W.2d 554, 560 (Iowa 2009). “[T]he question whether a particular statement constitutes hearsay presents a legal issue,” leaving the trial court no'discretion on whether to admit or dehy admission of the statement. State v. Dullard, 668 N.W.2d 585, 589 (Iowa 2003).
With respect to the issue now raised’ on further review involving the district'court’s'decision tó admit at trial the statements óf identity made to the medical providers, we recognize we may affirm'a ruling on the admission of evidence by using a different rationale than relied on by the district court. See DeVoss v. State, 648 N.W.2d 56, 62 (Iowa 2002). However, the rule described -in DeVoss is discretionary, and we must bé-careful not to exercise our discretion to decide an issue concerning the admissibility of evidence on an alternative ground when the parties have not had an opportunity to properly develop or challenge the foundation for the . evidence. r .
*185 III. Admission of Statements Identifying Perpetrator.
“‘Hearsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Iowa R. Evid. 5.801(c). Hearsay' is not admissible at trial subject to certain exceptions and exclusions. See id. r. 5.802.
The statements at issue in this case— third-party accounts of identification statements made by M.D. — are hearsay. The question is whether they are admissible under' an exception to the rule against hearsay.
The general rationale for the rule against hearsay is that out-of-court statements are inherently unreliable because false perception, memory, or narration of the declarant cannot be addressed through the admission of an path or exposed through cross-examination of the declar-ant. .See.5 Jack B. Weinstein & Margaret A. Berger, Weinstein’s Federal Evidence § 802.02[3], at 802-6 to -7 (Mark S. Brodin 2d ed.2015) [hereinafter Weinstein], Thus, the exceptions to the rule against hearsay generally overcome this rationale through the identification of circumstances surrounding the issuance of the statement that demonstrate its reliability and necessity. See id. § 802.03[3] [a], at 802-8.
One exception to the rule against hearsay relates to statements made for the purposes of medical diagnosis and treatment. Iowa'R. Evid. 5.803(4). This exception applies to
[statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms,' pain," or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
Id. The. rationale for the exception is that statements made by a patient,to a doctor for purposes of medical diagnosis or treatment are “likely to be reliable because the patient has a selfish motive to be truthful.” Weinstein § 803,06[1], at 803-41 to -42; see 7 Laurie Kratky Doré, Iowa Practice Series: ■ Evidence § 5.803:4, ;at 951-52 (2015-2016 ed.2015) . [hereinafter Doré], This motive exists because the effectiveness of the medical treatment rests on the accuracy of the information imparted to the doctor. Weinstein § 803.06[1], at 803-41 to -42. A patient understands that a false statement in a diagnostic context could result in misdiagnosis. State v. Tomquist, 600 N.W.2d 301, 304 (Iowa 1999), overruled on other grounds by State v. DeCamp, 622 N.W.2d 290 (Iowa 2001). Thus, the circumstances of statements rhade for diagnosis and treatment provide “special guarantees of credibility” and justify the exception to the rule against hearsay. State v. Hildreth, 582 N.W.2d 167, 169 (Iowa 1998).
The medical diagnosis or treatment" exception imposes two requirements. First, the exception applies to statements “made for purposes of medical diagnosis or treatment.” Iowa R. Evid. 5.803(4). Second, the statements must describe “medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.” Id. Thus, the first requirement is directed at the purpose and motive of the -statement, and the second requirement is directed at the content or description of the statement.- Yet as to both requirements, the statements must also “be reasonably pertinent to diagnosis or treatment.” .Doré § 5.803:4, at 952. These requirements track with the two-part test we adopted in State v. Tracy for establishing- the admission of hearsay *186 statements identifying a child abuser under the exception for medical diagnosis and treatment. 482 N.W.2d 675, 681 (Iowa 1992) (“[F]irst[,] the declarant’s motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as-is reasonably relied on by a physician in treatment or diagnosis.” (quoting United States v. Renville, 779 F.2d 430, 436 (8th Cir.1985))).
The fighting issue in this case is whether the portion of the statement made to a doctor or nurse that identifies the person who caused or was the source of the injury is reasonably pertinent to diagnosis or treatment. This is a question that can be vexing for judges and lawyers. Normally, the identity of the perpetrator of physical injuries is not understood to be necessary information for effective medical treatment. United States v. Joe, 8 F.3d 1488, 1494 (10th Cir.1993). Thus, these statements generally lack the inherent reliability of statements by patients to doctors for medical diagnosis or treatment. Colvard v. Commonwealth, 309 S.W.3d 239, 245-46 (Ky.2010) (finding ho inherent trustworthiness in identification statement not arising from a desire for effective treatment). When the identity of the perpetrator of an injury is not necessary information for effective medical treatment, a declarant could remato motivated to truthfully describe the cause of injuries while being motivated to suppress or twist the identity of the. perpetrator towards their own ends. See State v. Long, 628 N.W.2d 440, 444. (Iowa 2001) (noting ulterior motives aside from treatment may affect statements of causation made to medical providers). In other words, self-motivation to be truthful that supports the admission of statements under the exception may be absent when the identity of the perpetrator is not necessary or pertinent to the medical diagnosis or treatment. See id. Accordingly, each assertion sought to be admitted that is contained within a broader statement made to medical providers must meet the requirements of the exception to be admissible.
We have identified some circumstances when - statements that identify perpetrators are admissible under Iowa Rule of Evidence 5.803(4). One circumstance involves the identity of perpetrators of child abuse. See Tracy, 482 N.W.2d at 681-82. .When the “alleged abuser is a member of the victim’s immediate household, statements regarding the abuser’s identity are "reasonably relied on by a physician in treatment or diagnosis.” Id. at 681. The emotional and psychological injuries of such abuse are treated by the doctor along with the physical injury. Id. The doctor is also often concerned about the possibility of recurrent abuse. Id. In Tracy, the doctor followed a standard dialogue for purposes of diagnosis and treatment, and the victim understood that the doctor needed truthful responses to provide treatment. Id. This circumstance is key to admitting statements of identity.The circumstances need to show that the victim’s statéments are “not prompted by concerns extraneous to the patient’s physical or emotional problem.” Hildreth, 582 N.W.2d at 169-70.
The State argues that cases of domestic abuse fall within the same rule that commonly allows statements of the identity of perpetrators in cases of child abuse to be admitted. It argues the circumstances of this case, fit within the reasoning behind the child-abuse exception because, they do not show M.D. was motivated to be.untruthful when she identified. Smith as the assailant.
The State’s overarching argument suggests that a categorical rule has *187 emerged from rule 5.803(4) that admits statements of identity made to medical personnel by victims of child abuse and that should also apply to-victims of domestic abuse. Yet, no such categorical rule for victims of child abuse has been recognized. While it is common for statements of identity made by victims of child abuse to be admitted under rule 5.803(4), the statements are not admitted simply because they fall within a category of statements made to doctors or medical personnel by victims of abuse. Instead, these statements are admitted only when there is evidence that the statements of identity were made by a child-abuse victim for purposes of diagnosis or treatment by a doctor or medical provider and the identity was pertinent to the diagnosis or treatment. See State v. Dudley, 856 N.W.2d 668, 676 (Iowa 2014) (“The child must make the statements to a trained professional for the purposes of diagnosis or treatment to be admissible under rule 5.803(4).”); Doré § 5.803:4, at 957-58 & nn. 22-23 (collecting cases and contrasting how courts apply the rule); see also State v. Neitzel, 801 N.W.2d 612, 621-22 (Iowa Ct.App.2011) (discussing the steps taken by healthcare professionals to ensure truthfulness and the need to assess safety risks and the child’s need for further counseling). Eliciting the identity of a perpetrator of child abuse can be a normal aspect of medical treatment and diagnosis for child abuse victims; however, the value of that information is established by the foundational testimony of the doctors and medical providers in each case, and that testimony explains the pertinence of the perpetrator’s identity to the diagnosis and treatment of the victim in the unique circumstances of each case. See, e.g,, Hildreth, 582 N.W.2d at 169-70 (setting foundation for social workers’ diagnosis of child’s emotional disturbance resulting from sexual abuse). The need to establish foundation for the admission of evidence under rule 5.803(4) is compatible with the standard approach to the admission of evidence under most other rules of evidence. In other words, proper foundation must normally be estáblished before evidence may be admitted. See State v. Tompkins, 859 N.W.2d 631, 639 (Iowa 2015) (requiring the State to lay a proper foundation before finding hearsay statements identifying a domestic abuse assailant and his actions admissible). There is no rule that provides-a categorical exception for victims of child abuse or domestic abuse.
The profound and serious problem of domestic abuse in this nation and this state does not escape us in our analysis of this case. These problems are significant for viqtims of domestic abuse and the children who have suffered by witnessing the abuse. The consequences to these victims and society as a whole are diverse and immense. These are problems and consequences , this court has been addressing for decades. See generally Final Report of the Supreme Court Task Force on Courts’ and Communities’ Response to Domestic Abuse (1994) (compiling statistics on the incidence of domestic abuse in Iowa, identifying the courts’ role, and formulating recommendations to address the problem from the judicial standpoint). We are also aware that the underlying dynamics of domestic abuse can create many obstacles in the criminal prosecution of perpetrators. See Laurie S: Kohn, The Justice System and Domestic Violence: Engaging the Case but Divorcing the Victim, 32 N.Y.U. Rev. L. & Soc. Change 191, 200-06 (2008) (discussing the influence of outside factors on victims’ behavior both before and after reporting abuse and affecting their cooperation with the justice system). These complex dynamics can lead many victims to refrain from .reporting abuse and then further lead to the *188 recantation of statements of identity prior to trial. See id. at 203-05 (noting victims may ask to drop the criminal case, refuse to testify, recant, or downplay their risks); Jennifer L. Truman & Rachel E. Morgan, U.S. Dep’t of Justice, Nonfatal Domestic Violence, 2003-2012, at 9 & tbl. 8, http:// www.bjs.gov/content/pub/pdf/ndv0312.pdf (revealing only around fifty-five percent of domestic violence is reported to police). Nevertheless, our role in reviewing the admission of the hearsay statements at trial in this case is not to inject this policy into the analysis to create a new rule of evidence. Our authority to establish rules to govern the trial of a case exists independent of our authority to decide issues presented to us on appeal 'in cases. Today, we only address the issue of admission of statements of identity through our existing rule of evidence. Our role is to interpret the rule as it is written and apply the hearsay exception as it exists.
Moreover, any categorical evidentiary rule must carefully consider the competing interests at stake. These interests include those found in the constitutional right of people accused of crimes to be confronted by their accusers. See, e.g., State v. Bentley, 739 N.W.2d 296, 300-01 (Iowa 2007) (weighing accused’s confrontation right against the interests of a- child abuse victim). They are also found in the concept of fundamental fairness. See Iowa R. Evid. 5.102. The sheer complexity of domestic abuse would need to be considered, including both the interests of the victim and the rights of the accused. It has been observed that “there is neither a ‘typical’ victim of domestic violence, nor ‘typical’ responses, nor ‘typical’ circumstances in which such violence occurs.” Jane C. Murphy & Robert Rubinson, Domestic Violence and Mediation: Responding to the Challenges of Crafting Effective Screens, 39 Fam. L.Q. 53, 58 (2005) (footnotes omitted). Thus, any categorical rule eannot be adopted that would “ignore[] variables such as the seriousness of the assault, the frequency of the abuse against the victim, the type of domestic relationship, or the presence dr absence of emotional or psychological harm.” State v. Robinson, 718 N.W.2d 400, 407 (Minn.2006) (refusing to adopt a categorical exception to rule 803(4) in domestic violénce cases).
We understand how the identity of an abuser could be pertinent to the treatment of a domestic abuse victim by a doctor. Domestic' abuse victims suffer from far more than physical injuries. Emotional and psychological injuries are also inflicted with an assault, and it is understandable how the'depth and breadth of those injuries would vary depending on the identity of the abuser. As a result, we see how complete medical treatment could normally include information on the identity of the abuser. Yet, until a categorical rule exists, this understanding must be supplied from the testimony of doctors in the form of foundation pursuant to the broad rule providing for the admission of hearsay statements for all types of medical treatment. See Joe, 8 F.3d at 1494 & n. 6 (citing to doctor testimony that established foundation despite finding there is general need for identity knowledge in domestic abuse cases).
In this light, we reject the argument by the State that statements of identity by victims of domestic abuse should be categorically admissible because such statements are-now commonly admitted in cases of child abuse. Instead, we hold that in each case; the trial court must, as with other statements made during medical diagnosis and treatment, apply the test we adopted in Tracy to determine whether the statements made in that case should fall within this exception to the *189 hearsay rule.[1] 482 N.W.2d at 681. The State, as the proponent of the evidence, has the burden to show the statements fit within rule 5.803(4).[2] Long, 628 N.W.2d at 443.
The foundation required to admit a statement identifying a perpetrator 'of domestic abuse under rule 5.803(4) need not be elaborate. It establishes why the identity of the assailant is important in a domestic abuse case, as opposed to stranger assault, and what effect that identity has on diagnosis or treatment. It recognizes there is a difference between the need to know the cause or external source of the injuries — i.e., “what happened”— and the need to know the identity of the person causing the injuries. See United States v. Iron Shell, 633 F.2d 77, 84 (8th Cir.1980) (“It is important to note that the statements concern what happened rather than who assaulted her. The former in most cases is pertinent to diagnosis and treatment while the latter would seldom, if ever, be sufficiently related.”).[3] It requires evidence that the identity of the perpetrator was reasonably pertinent to medical treatment or-diagnosis. We now turn-to the evidence in this case. •
The trial record in this case shows the nurse and the doctor only asked M.D. how she was injured, and their treatment efforts that followed only focused on the physical, trauma to her head, arm; and hand. . The nurse r also asked three questions pertaining, to dor mestic abuse in general pursuant to a broader screening protocol. However, the State offered no evidence that the protocol questions prompted any treatment of M.D. for. her emotional or psychological response to .the injuries or were .asked in order to make a diagnosis relating specifically to, domestic assault over other types of assault. In other words, the foundational evidence relating, to her statements only pertained to the treatment she received for her physical injuries, not treatment she might have needed for her emotional, psychological, or other injuries as a result of the domestic violence.
M.D. was prescribed antianxiety medication prior to her discharge, but there *190 was no evidence that the medication pertained to treatment of- domestic abuse rather than the same anxiety as might be felt in a stranger-assault situation. It would be pure speculation to conclude the antianxiety medication related to 'the identity of the pérpetrator. The rale' requires that the connection between the statement and the' treatment be “reasonable.” Iowa R. Evid. 5.803(4). -
Importantly, there was no evidence to suggest M.D. believed the identity of the perpetrator was reasonably pertinent’ to her treatment or diagnosis. Theré was no evidence the nurse or doctor told M.D. the identity of the perpetrator was important to the treatment or diagnosis- of her injuries. There was no evidence the nurse or doctor used the identity- of the perpetrator to treat or diagnosis M.D.’s injuries. In fact, there was nothing from the circumstances at the hospital to reasonably indicate M.D.’s treatment or diagnosis would have been different if she had not mentioned the identity of her perpetrator in describing how she was injured.
In short, the State presented insufficient evidence that the identity of the assailant was reasonably pertinent to M.D.’s diagnosis or treatment. Consequently, the circumstances mandated by the exception to show M.D. was self-motivated to truthfully describe her assailant were not established. Without this foundation, the trial court erred in admitting the portion of the statement that identified Smith as the assailant. .
We acknowledge that the general circumstances presented at trial do not suggest a motivation by M.D. to be untruthful in her identification of Smith- as her assailant to the emergency room nurse and doctor. Her statements of identity were not prompted by any cues asking for the identity of the perpetrator, and she only conveyed Smith’s identity as part of the description of how she was injured.[4] Yet the exception does not seek to use the absence of a motive to be untruthful, but it requires evidence of a specific motivation to be truthful derived from its rationale. We are required to follow rule 5.803(4) as it is written.
This conclusion does" not mean the identity of a perpetrator of domestic abuse can never be admitted into evidence under rale 5.803(4). It only means that the State must introduce evidence to establish the necessary foundation regarding both the declarant’s motive in making the statement and the pertinence of the identification in diagnosis or treatment. This foundation requires evidence that a statement of identity was made for the purpose of medical diagnosis or treatment and the identity was part of a medical history reasonably pertinent to diagnosis or treatment.
IY. Conclusion.
We conclude the trial court committed legal error by admitting the hearsay statements of M.D. through the testimony of the emergency room nurse and doctor without sufficient foundation. This error resulted in prejudice and requires a new trial. To be fair to both parties, we decline to consider for the first' time on appeal whether the evidence would have been admissible under another exception to the rule against hearsay. Accordingly, we reverse the judgment and sentence of the district court and remand for a new trial.
*191 DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.
All justices concur except WATERMAN, MANSFIELD, and ZAGER, JJ., who dissent. .

.Several other courts 'also examine whether criteria similar to our Tracy test have been met before admitting identity statements. B.g., United States v. Bercier, 506 F.3d 625, 632 (8th Cir.2007) (requiring foundation that the statements were essential to diagnosis and treatment in domestic sexual abuse case); Robinson, 718 N.W.2d at 407 (holding domestic abuse victim’s identification of her assailant inadmissible without sufficient evidentiary foundation establishing the identity was reasonably pertinent to diagnosis or treatment); State v. Moen, 309 Or. 45, 786 P.2d 111, 118-21 (1990) (en banc) (examining prior statements made concerning domestic abuse causing victim’s depression to determine whether they met the- foundational criteria of pertinence to medical diagnosis in murder case); Oldman v. State, 998 P.2d 957, 961-62 (Wyo.2000) (utilizing the Renville criteria to determine the identity in a domestic abuse case was pertinent for treating bite marks for infectious condition).

. We recognize that statements made to emergency personnel in order to obtain medical treatment can also fall within the excited-utterance exception to the hearsay rule. Iowa R. Evid. 5.803(2); State v. Harper, 770 N.W.2d 316, 319-20 (Iowa 2009) (finding no need to determine if the statements would fall within rule 5.803(4) by holding other, exceptions applied). . However, the State made no claim in the district court or its appeal that the excited-utterance rule should apply, '

. The United States Court of Appeals for the Eighth Circuit found five years later that a child-abuse victim who lived in the same household with the abuser was sufficiently different to fall within the narrow seldom-sufficiently-related category left open by Iron Shell Renville, 779 F.2d at 436.

. M.D. recanted not only the identity of an assailant, but even the existence of an assault causing her injuries when she testified in court. However, the treating nurse and physician both testified that M.D.’s injuries were consistent with the description of the assault that evening.