# IN THE COURT OF APPEALS OF IOWA

No. 20-0825
Filed October 6, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JEFFREY JUERGENS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Wittig, Judge.

Jeffrey Juergens appeals his convictions of lascivious acts with a child by solicitation and indecent exposure. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., Mullins, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GAMBLE, Senior Judge.**

Jeffrey Juergens appeals his convictions of lascivious acts with a child by solicitation and indecent exposure. We affirm.

**I. Background Facts**

Juergens is a grandfather figure to, then four-year-old, A.R.G. In March 2019, A.R.G.'s parents arranged for Juergens to watch A.R.G. when their usual babysitters were not available. The next day, A.R.G. watched a movie featuring a character with a scar and commented "that grandpa had showed her his scar." Her parents questioned if she meant Juergens's scar from open-heart surgery. A.R.G. told them no and instead said that Juergens had pulled down his pants. When questioned further about what she meant, A.R.G. demonstrated what Juergens did by pulling her pants down. A.R.G. also told her mother that Juergens "asked her to touch it, and she said no." According to the father, A.R.G. also said that Juergens "touched her down there so it hurt, and then she laid down on the floor and cried."

The father called his mother (the grandmother) and asked about what A.R.G. said. Juergens was with the grandmother and denied he did anything, but A.R.G. could hear his denials over the phone and kept saying, "Yes, he did. Yes, he did, did do that."

The mother planned to report the incident the following Monday. That weekend, the mother was stressed and "pretty emotional" but "tr[ied] to keep it peaceful for [A.R.G.] and not talk about it a whole lot, because [she] wasn't quite sure how to deal with it." A.R.G. did not bring up the incident over the weekend.

The following Monday, the mother gave a statement to the police while A.R.G. was present. Then the mother took A.R.G. for a medical examination by a pediatrician. A.R.G. was "very quiet and subdued" during the examination. The pediatrician talked primarily with the mother, then with A.R.G. A.R.G. responded to questions by nodding her head yes or no. The pediatrician asked "whether her grandfather did what she said earlier, whether he had showed her his private parts," and A.R.G. responded affirmatively. She asked "if he had her touch his private parts with her hand," and A.R.G. responded affirmatively. She asked "whether he put his private parts in her mouth," and A.R.G. responded in the negative. And she asked "if he put his fingers or private parts inside of her private parts," and A.R.G. responded in the negative.

Ten days later, Rachel Haskin completed a recorded child protective center (CPC) forensic interview of A.R.G. During the interview, A.R.G. stated Juergens showed her his "coochie" and asked her to touch it but she said no.

Juergens was then charged by trial information with second-degree sexual abuse, lascivious acts with a child by fondling or touching, lascivious acts with a child by solicitation, and indecent exposure. A jury found Juergens guilty of lascivious acts with a child by solicitation and indecent exposure. He was acquitted of the other two counts.

Juergens appeals raising evidentiary claims. We will discuss additional facts as necessary.

**II. Standard of Review**

"Although we normally review evidence-admission decisions by the district court for an abuse of discretion, we review hearsay claims for correction of errors

at law." *State v. Smith*, 876 N.W.2d 180, 184 (Iowa 2016). "A court must exclude hearsay unless it is admitted as an exception or exclusion to the hearsay rule." *State v. Overstreet*, No. 15-1704, 2016 WL 7403728, at *4 (Iowa Ct. App. Dec. 21, 2016) (citing *State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006)). "Subject to the requirement of relevance, the district court has no discretion to deny the admission of hearsay if it falls within an exception, or to admit it in the absence of a provision providing for admission." *Id.* (quoting *Newell*, 710 N.W.2d at 18).

## III. Discussion

"Hearsay is a statement, other than one made by the declarant while testifying at the trial . . . offered in evidence to prove the truth of the matter asserted." *State v. Veverka*, 938 N.W.2d 197, 199 (Iowa 2020) (citation and internal quotation marks omitted). "As a general rule hearsay is not admissible." *Id.* "Hearsay can be admitted when the proffered evidence falls within one of the numerous exceptions to the hearsay rule." *Id.*

Here, several of A.R.G.'s out-of-court statements were admitted for the truth of the matter asserted through various means. So the district court should not have admitted them unless they fell within an exception to the rule against hearsay. Juergens claims the district court erred in two respects. First, he argues the court erred in admitting a video of the CPC interview and testimony of A.R.G.'s parents under the residual exception to the hearsay rule. Second, he argues the court erred in permitting the pediatrician to testify to A.R.G.'s statements under the medical-treatment exception. We address Juergens's claims in turn.

**A. Residual Exception**

We first address the district court's admission of the CPC interview under the residual exception to the hearsay rule. Iowa Rule of Evidence 5.807 governs the rule and provides:

> a. *In general.* Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in rule 5.803 or 5.804:
> (1) The statement has equivalent circumstantial guarantees of trustworthiness;
> (2) It is offered as evidence of a material fact;
> (3) It is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) Admitting it will best serve the purposes of these rules and the interests of justice.
> b. *Notice.* The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.

The residual exception to the hearsay rule is used "very rarely, and only in exceptional circumstances." *Id.* at 200 (citation omitted). "'Before hearsay evidence can be admitted' under the residual exception, 'the district court must make five findings concerning the nature of the evidence: (1) trustworthiness; (2) materiality; (3) necessity; (4) notice; and (5) service of the interests of justice.'" *Id.* at 201 (citation omitted).

*1. The CPC video*

Juergens attacks the district court's finding with respect to the first element, whether the CPC video is trustworthy. He points to differences between what A.R.G. said in the interview and what she told her parents and grandmother, that

A.R.G. had already been questioned by several adults before the CPC interview, and the style of questioning used during the interview.

"With respect to trustworthiness, the relevant consideration is whether the proffered evidence has 'circumstantial guarantees of trustworthiness.'" *Id.* at 203 (citation omitted). We conclude the CPC interview has "circumstantial guarantees of trustworthiness" despite Juergens's concerns for multiple reasons. First, hearsay submitted through video evidence "is more reliable than many other forms of hearsay because the trier of fact could observe for itself how the questions were asked, what the declarant said, and the declarant's demeanor." *State v. Rojas*, 524 N.W.2d 659, 663 (Iowa 1994). Second, interviewer Haskin has been "educated and trained in this type of interview" and has completed over 2000 such interviews. *See State v. Neitzel*, 801 N.W.2d 612, 623 (Iowa Ct. App. 2011). Haskin asked age-appropriate questions that were generally open-ended and non-leading. *See Rojas*, 524 N.W.2d at 663. She did ask A.R.G., "Has a boy ever showed you his coochie?" This is a close-ended question. However, it left open A.R.G. to identify the person who showed her "his coochie." A.R.G.'s response identified Juergens, her "grandpa," in response. In doing so, she went beyond the close-ended scope of the question and identified Juergens unprompted. So we do not view the questioning as leading. Third, our trust in the interview is not undermined by the fact that four-year-old A.R.G.'s story varied slightly from when she talked to others. It is unexceptional that a child of A.R.G.'s age would not be totally consistent each time she discussed her interaction with Juergens. Fourth, we do not take issue with the fact that A.R.G. had talked to others (her parents, grandma, and pediatrician) beforehand. Children must be able to recount

instances of abuse to adults for investigations to commence. So we will not find a child's out-of-court statement untrustworthy simply because the child had previously disclosed abuse to other adults. *Cf. State v. Garcia*, No. 20-0227, 2021 WL 210744, at *1, 2 (Iowa Ct. App. Jan. 21, 2021) (finding A CPC interview trustworthy and the child had previously disclosed the abuse to a parent); *State v. Heggebo*, No. 17-1194, 2018 WL 6719729, at *1, 2, 4 (Iowa Ct. App. Dec. 19, 2018) (determining a CPC video was trustworthy where the child had talked to both parents and a nurse about the abuse and prior to the CPC interview); *State v. Olds*, No. 14-0825, 2015 WL 6510298, at *1, 8 (Iowa Ct. App. Oct. 28, 2015) (finding a video of a CPC interview admissible and the child had previously disclosed the abuse to her parent).

Juergens also challenges the last element, whether the evidence serves the interest of justice. *See Veverka*, 938 N.W.2d at 201. "With respect to the finding regarding the interests of justice, evidence serves the interests of justice where '[t]he appropriate showing of reliability and necessity were made, and admitting the evidence advances the goal of truth-seeking expressed in Iowa Rule of Evidence [5.102]." *Veverka*, 938 N.W.2d at 204 (alterations in original) (citations omitted). Juergens contends there can be no "showing of reliability" as required under this element because the evidence is not trustworthy. *See id.* We disagree. On the contrary, and as already discussed, we find this evidence to be trustworthy. It is reliable. And it is necessary. Since there were no witnesses to this occurrence other than Juergens and the child, the statements of the child are "more probative… than any other evidence that the [State] can obtain through reasonable

efforts." *Id.* So the last element requiring the CPC video's admission be in the interest of justice is met.

We conclude the court correctly admitted the CPC interview video under the residual exception to the hearsay rule.

*2. Parents' testimony*

Next, Juergens argues the court erred in permitting the parents to testify to A.R.G.'s statements to them under the residual exception to the hearsay rule. The State's brief heading argues the parents' testimony qualifies under the residual exception; however, it does not develop a supporting argument. Instead the State argues the parents' "testimony was merely cumulative and therefore not prejudicial." We agree. "[T]he erroneous admission of hearsay is presumed to be prejudicial unless the contrary is established affirmatively." *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998). "However, we will not find prejudice if the admitted hearsay is merely cumulative." *Id.*

The parents' retelling of A.R.G.'s out-of-court statements included statements that were properly admitted through other means, including the CPC video. The father's testimony that A.R.G. told him Juergens touched her inappropriately transcends the child's disclosure in the CPC interview. But this statement is cumulative of other evidence as well. For example, in A.R.G.'s deposition, which was admitted at trial, she stated that "grandpa" touched her private part while they watched television. The pediatrician testified that A.R.G. "said that he touched her privates and touched her genitals with his hand, and that she touched his private parts." The pediatrician's clinical notes were admitted at trial and stated that A.R.G. "endorsed that 'grandpa' showed her his privates and

had her touch his privates with her hand. She also endorsed that he touched her privates (pointed to her genitals) with his hand and with his private parts." Therefore, we conclude the testimony of A.R.G's parents was merely cumulative and not prejudicial, making it unnecessary to determine whether A.R.G.'s statements were admissible under the residual exception. *See id.*

### B. Medical-Treatment Exception

Finally, Juergens claims the pediatrician's testimony was improperly admitted under the medical-treatment exception. Iowa Rule of Evidence 5.803(4) governs this exception and provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
> . . . .
> (4) *Statement made for medical diagnosis or treatment.* A statement that:
> (A) Is made for—as is reasonably pertinent to—medical diagnosis or treatment; and
> (B) Describes medical history, past or present symptoms or sensations, or the inception or general cause of symptoms or sensations.

The reasoning for this exception being "statements made by a patient to a doctor for purposes of medical diagnosis or treatment are likely to be reliable because the patient has a selfish motive to be truthful." *State v. Walker*, 935 N.W.2d 874, 879 (Iowa 2019) (citation and internal quotations omitted). "[A] child-declarant's identification of an abuser during treatment with a healthcare professional . . . fall[s] within the exception when 'the declarant's motive in making the statement [was] consistent with the purposes of promoting treatment' and was of the type 'reasonably relied on by a physician in treatment or diagnosis.'" *Id.* (fourth alteration in original) (quoting *State v. Tracy*, 482 N.W.2d 675, 681 (Iowa 1992)).

"Yet as to both requirements, the statements must also 'be reasonably pertinent to diagnosis or treatment.'" *State v. Smith*, 876 N.W.2d 180, 185 (Iowa 2016) (citation omitted).

Juergens first challenges whether A.R.G.'s motive in making the statements to the pediatrician was for the purpose of medical treatment. He argues the mother took A.R.G. to the pediatrician at the direction of the Iowa Department of Human Services "to document any evidence [and] for determination of whether abuse occurred," as opposed to medical treatment. Juergens focuses on the fact that "[t]here were no claims of physical injury prior to the appointment with [the pediatrician]." But that does not mean A.R.G. did not need medical attention. The pediatrician testified her examination of A.R.G. "was at the recommendation of the ER so that she could be examined by a pediatrician, due to concerns for sexual abuse." *See id.* at 187 (holding the State has the burden to show the statements of the child are pertinent to the diagnosis and treatment by a doctor or medical provider). "In cases of child sexual abuse, ascertaining the identity of the abuser is important for medical purposes because the child's age prevents her [or him] from implementing self-care . . . ." *Walker*, 935 N.W.2d at 879. When a child identifies a family member as their abuser, the treating physician "is . . . often concerned about the possibility of recurrent abuse." *See Smith*, 876 N.W.2d at 186. And the physician can identify and treat emotional and psychological injuries that result from familial abuse. *See id.* So a family member's identity as the perpetrator is relevant to the physician's treatment of the child.

Here, the pediatrician asked A.R.G. questions about what, if anything, happened to her body so she could determine if A.R.G. required medical

treatment. The pediatrician asked "very standard questions," which were "specific questions, as [the pediatrician] had been trained in residency." A.R.G. was withdrawn and sat on the floor, presumably in effort to not engage in the examination. Yet she meaningfully participated in the examination by nodding or shaking her head in response to questions, as opposed to responding to all questions uniformly. She shook her head in the negative when the pediatrician asked "whether he put his private parts in her mouth," and "if he put his fingers or private parts inside of her private parts." So we conclude she answered questions truthfully and in effort to further her medical treatment.

Juergens also argues A.R.G.'s statements[1] are not the type a physician could reasonably rely on in treatment or diagnosis. *See id.* Juergens highlights A.R.G. "ha[d] been repeatedly questioned" and had heard "the adults' version of events as they repeat[ed] them to each other" and reasons, as a result, her statements could not be reliable. We disagree. Simply because A.R.G.'s family asked her questions about what happened so they could understand her needs does not mean she could not provide reliable information to a physician. Instead, we find A.R.G.'s statements to be the type a physician could rely on when determining if she required any type of treatment. Here, the pediatrician relied on A.R.G.'s statements to conclude she required no additional treatment.

Therefore, we conclude the court properly permitted the pediatrician's testimony under the medical-treatment exception.

---

[1] A statement can be "[n]onverbal conduct, if intended as an assertion." Iowa R. Evid. 5.801(c). Here, A.R.G.'s nonverbal conduct of shaking or nodding her head amount to statements.

**IV. Conclusion**

The court correctly admitted the CPC interview under the residual exception to the hearsay rule. The parents' testimony about what A.R.G. said was cumulative so it was not prejudicial. And the pediatrician's testimony was properly admitted under the medical-treatment exception to the hearsay rule.

**AFFIRMED.**