# IN THE COURT OF APPEALS OF IOWA

No. 21-0791
Filed September 21, 2022

**GARY CHARLES WOOD, JR.,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.


Gary Wood appeals the denial of his application for postconviction relief.
**AFFIRMED.**


Heidi Miller of Gribble, Boles, Stewart & Witosky Law, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee State.


Considered by Vaitheswaran, P.J., Ahlers, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**VOGEL, Senior Judge.**

Gary Wood appeals from the denial of his application for postconviction relief (PCR). He seeks relief from his guilty plea to domestic abuse assault, second offense, for events occurring on or about April 30, 2019. In this PCR appeal, he argues he is actually innocent of the charge. We reject his argument and affirm.

According to the incident report in the minutes of testimony, Des Moines police responded to a reported domestic dispute at the home of Wood and M.M. on April 30, 2019. M.M. told officers she and Wood were in an argument that turned physical, with Wood punching her throughout her body and hitting her knee with a hammer. Officers noted bruises covering her body, many of them fresh. Wood was arrested and charged with domestic abuse assault.

On June 18, 2019, Wood filed, and the district court accepted, his written guilty plea for domestic abuse assault, second offense.[1] Wood wrote in his plea, "I pushed [M.M.], my gF who I live with, she took offense. I have previous conviction of domestic assault." The court sentenced Wood to a term of incarceration not to exceed two years, suspended, with credit for time served. In February 2020, the court revoked his probation and imposed the full term of incarceration not to exceed two years.[2]

---

[1] Wood's written guilty plea asked "that the Court accept as true the minutes of testimony to further establish the factual basis for this offense." The court's order accepting the plea explicitly considered the minutes.

[2] Also in February 2020, the court convicted Wood of domestic abuse assault, third or subsequent offense, as a habitual offender for events occurring on or about June 30, 2019. M.M. was again his victim. The court ran the sentences for his two domestic-abuse-assault convictions consecutively. On direct appeal, we affirmed his conviction and sentence for the June 30 domestic abuse assault. *See State v. Wood*, No. 20-0327, 2021 WL 3895909, at *4–6 (Iowa Ct. App. Sept. 21, 2021). Wood was also charged with, and eventually convicted of, suborning

In December 2019, Wood filed his PCR application. He made multiple claims, including that he was actually innocent of the charge based on M.M. recanting her statements. The matter proceeded to a hearing in April 2021. At the PCR hearing, Wood denied assaulting M.M., contending he was home while M.M. was at her mother's house at the time in question. The court rejected all of Wood's claims and denied his PCR application.

Wood appeals the denial of his actual-innocence claim. We generally review the denial of a PCR application for correction of errors at law. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). However, we review constitutional issues de novo. *Id.* "In addition, we give weight to the lower court's findings concerning witness credibility." *Id.*

> For [a PCR] applicant to succeed on a freestanding actual-innocence claim, the applicant must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, including the newly discovered evidence.

*Schmidt v. State*, 909 N.W.2d 778, 797 (Iowa 2018).

Wood introduced five documents as exhibits at the PCR hearing: (1) a notarized letter from M.M., dated May 23, 2019, wherein she denied Wood was violent; (2) a letter from M.M. to the district court, filed December 23, 2019, asking for dismissal of all charges against Wood; (3) a letter from Wood's investigator, dated December 28, 2020, stating M.M. acknowledged lying to the police about

---

perjury in the latter proceeding after he repeatedly called M.M. from jail despite a no-contact order. We reversed his conviction for suborning perjury, finding insufficient evidence he induced M.M. to conceal material facts. *See State v. Wood*, No. 20-0614, 2021 WL 3895230, at *5 (Iowa Ct. App. Sept. 21, 2021).

Wood; (4) a series of emails from October and November 2019 between M.M. and a prosecutor wherein she states Wood never hit her and discusses other issues; and (5) a series of emails from November 2019 between M.M. and another prosecutor wherein they discuss her recantation.

The district court described M.M.'s recantations as "rambling" and "difficult to understand." We agree and note only exhibit 1 predates the latter domestic abuse assault, making it unclear as to whether M.M. is attempting to explain the events of April 30 or June 30, 2019, in her recantations. While the accounts in these recantations are confusing and somewhat inconsistent, they seem to describe an altercation between M.M. and Wood while denying he intentionally hit her. Thus, these recantations may not actually refute the facts to which Wood admitted, that he pushed her.

More fundamentally, M.M.'s statements are difficult to believe. *See State v. Smith*, 876 N.W.2d 180, 187–88 (Iowa 2016) (stating the "complex dynamics [of domestic abuse] can lead many victims to refrain from reporting abuse and then further lead to the recantation of statements of identity prior to trial"). The prosecutor in exhibit 5 found her statements "not credible" based on her refusal to cooperate with or participate in the proceedings, her visible injuries, and Wood's criminal history. She described a clear and brutal assault in the incident report, making her recantations wildly different in a way that cannot be explained as a simple misunderstanding or mistaken identity. In his own PCR testimony, Wood acknowledged M.M. can have difficulty correctly perceiving events. He apparently understood M.M. could have credibility issues if she recanted at trial, as he pleaded

guilty despite knowing of M.M.'s recantations.[3]  To the extent Wood also raises a claim of newly discovered evidence based on M.M.'s recantations, his knowledge of her recantations at the time he pleaded guilty precludes this claim.  *See More v. State*, 880 N.W.2d 487, 499 (Iowa 2016) (stating a successful PCR claim of newly discovered evidence requires the applicant to show "the evidence was discovered after the verdict" (quoting *Jones v. State*, 479 N.W.2d 265, 274 (Iowa 1991))).

Given the issues with M.M.'s recantations, Wood has not provided clear and convincing evidence no reasonable factfinder would convict him of domestic abuse assault considering all of the evidence.  *See Schmidt*, 909 N.W.2d at 795.  We affirm the rejection of his actual-innocence claim and the denial of his PCR application.

**AFFIRMED.**

---

[3] At the PCR trial, Wood testified he did not know about M.M.'s recantations before pleading guilty.  However, his plea counsel testified they discussed M.M.'s recantations "[m]any times" before he pleaded guilty.  The PCR court found Wood was aware of and discussed M.M.'s recantations before pleading guilty, and we place weight on this finding.  *See Ledezma*, 626 N.W.2d at 141.