# IN THE COURT OF APPEALS OF IOWA

No. 24-1361
Filed September 4, 2025

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**KEWION MARQUIS BOYCE,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Des Moines County, Clinton R. Boddicker, Judge.

      A defendant appeals his convictions and sentence following a jury trial. **AFFIRMED**.

      Cathleen J. Siebrecht of Siebrecht Law Firm, Pleasant Hill, for appellant.

      Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

      Considered without oral argument by Schumacher, P.J., and Badding and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Kewion Boyce appeals his convictions of willful injury causing bodily injury, in violation of Iowa Code section 708.4(2) (2023); first-degree harassment, in violation of sections 708.7(1)(a)(1) and 708.7(2)(a)(1); and domestic abuse assault causing bodily injury by strangulation, in violation of section 708.2A(5). Boyce asserts (1) the trial court erred by denying his motion for a continuance to obtain further information regarding a fair-cross-section challenge; (2) he was prejudiced by the trial court's evidentiary rulings; (3) the evidence was insufficient to support the convictions; and (4) the district court abused its sentencing discretion.

## I.  Background Facts and Proceedings

A rational jury could find the following facts from the evidence presented at trial in June 2024. On the afternoon of May 18, 2023, a friend drove M.R. to a home M.R. shared with Boyce. The friend waited in the car for ten to twenty minutes while M.R. went inside. M.R.'s friend then saw Boyce outside her car looking at her "real aggressively, like he was angry," and then she watched him depart in a car that was waiting in an alley.

An employee at a gas station near Boyce's house saw M.R. run into the gas station, "half naked, beaten, and bloody." The employee observed blood coming from M.R.'s mouth and nose and that her eyes were black and blue. The gas station employees thought M.R. seemed frightened and called 911. One employee exited the gas station to alert M.R.'s friend that M.R. was in the gas station. The friend entered the gas station and saw M.R. crying and injured. M.R.'s injuries were fresh; she was not injured when she entered the house.

Boyce's roommate was present in the house when M.R. arrived. The roommate was attempting to sleep in his room, as he worked the night shift. He heard arguing between M.R. and Boyce. And he was also roused by text notifications on his phone from a neighbor about the arguing. The roommate then got up to check what was going on. He saw Boyce and M.R. sitting, not arguing, and assumed they heard him get up and "chilled out." But after returning to his room, the roommate heard the arguing resume.

The roommate tried to go back to sleep, but Boyce came in and requested a ride. The roommate thought Boyce appeared upset. The roommate got in his car and drove around to the back of the house to pick up Boyce and did not see M.R. He noticed the inside of the house was "torn up," indicating something occurred between the time he went to bed and when Boyce requested transport.

After paramedics and police arrived, M.R. stated, "she had pain all over her body." A paramedic testified that M.R. told him, "She was hit and kicked . . . and . . . that she was hit with a pistol." An ambulance transported M.R. to the hospital. A nurse asked M.R. how the injuries occurred. The nurse testified that M.R. told her "[s]he was kicked, she was hit, she was choked when she entered a home that she was going to get her clothes from." M.R. also told a doctor that she was "stomped and hit with a gun." M.R. did not name her assailant.

After M.R. was discharged from the hospital, police learned that M.R. was receiving threatening phone calls from Boyce. Law enforcement went to meet with M.R. to obtain more information. Boyce called M.R. again while law enforcement was present, and M.R. placed Boyce on speakerphone. The officers testified that Boyce was aggressive, asking where she was, and threatening to "do to her face

like he did before." Less than a week later, M.R. consented to a search of her phone. The police discovered harassing texts from Boyce sent to M.R. in the days after the incident. A portion of the text messages reflected Boyce bragging about the damage to M.R.'s face.

About a week later, Boyce was arrested outside of a hotel and police seized his cell phone. M.R. was sharing the hotel room with Boyce; the room was under her name. The police analyzed the cell phone location data and found Boyce was with M.R. before she left the house on the day of the incident. Neither M.R. nor Boyce testified at trial.[1] Boyce was convicted following trial on all counts and sentenced to twelve years of incarceration.

## II.    Fair-Cross-Section Challenge

Boyce claims the district court erred in denying his motion to continue trial for the purpose of investigating facts related to whether the jury pool was a fair cross-section of the community.

We review "claims of systematic exclusion of a distinctive group from a jury pool" de novo as they raise constitutional questions. *State v. Williams*, 929 N.W.2d 621, 628 (Iowa 2019) (citing *State v. Plain*, 898 N.W.2d 801, 810 (Iowa 2017)).

The Sixth Amendment of the United States Constitution guarantees a criminal defendant "the right to 'an impartial jury of the state and district wherein the crime shall have been committed.'" *State v. Mong*, 988 N.W.2d 305, 310 (Iowa 2023) (quoting U.S. Const. amend. VI). Iowa also "guarantees the right to a 'trial

---

[1] While M.R. was initially cooperative with law enforcement, M.R. was unable to be located before trial. She did, however, have almost daily phone contact with Boyce at the jail.

by an impartial jury.'" *Id.* (quoting Iowa Const. art. I, § 10). "The United States Supreme Court and [the Iowa Supreme Court] have held the constitutional right to 'an impartial jury' includes the right to a jury 'drawn from a fair cross-section of the community.'" *Id.* (citing *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975); *Plain*, 898 N.W.2d at 821).

> [A] defendant establishes a prima facie violation of the fair-cross-section right by proving the following: (1) a group alleged to have been excluded from the jury pool is a distinctive group in the community; (2) the distinctive group's representation in the jury pool is not "fair and reasonable" when compared to the group's percentage in the community; and (3) the distinctive group's underrepresentation in the jury pool "is due to systematic exclusion of the group in the jury selection process."

*Id.* (quoting *Plain*, 898 N.W.2d at 822). The burden of proving a violation of a fair-cross-section right falls to the defendant. *Id.* at 310–11. "The 'inability to establish any one of the three . . . elements is fatal to a defendant's fair-cross-section challenge.'" *Id.* at 311 (ellipsis in original) (quoting *State v. Williams*, 972 N.W.2d 720, 724 (Iowa 2022)).

Also, a fair-cross-section right only applies to the jury pool, not the jury panel. *Id.* (citing *State v. Wilson*, 941 N.W.2d 579, 593 (Iowa 2020)). "The jury *pool* refers to members of the community summoned for jury duty and reporting to the courthouse for a particular time period. The jury *panel* refers to members of the pool directed to a particular courtroom . . . to serve as possible jurors for a specific trial." *Id.* (quoting *Plain*, 969 N.W.2d at 294–95).

Here, the record reflects that Boyce's counsel, although he filed a motion challenging the jury pool a day before trial, stated that "I think the numbers are

good per the prevailing test right now," in reference to the jury pool. Counsel then stated, "[t]he problem is that [there are] zero African Americans on the panel."

The standard articulated by our supreme court regarding acceptable fair-cross-section representation is that "the percentage of the group in the jury pool must be one standard deviation or more below its percentage in the overall population of eligible jurors." *State v. Lilly*, 930 N.W.2d 293, 304 (Iowa 2019). Even using the 6.4% population rate for African Americans in Des Moines County relied on by Boyce, five out of ninety-eight individuals in the pool fell within one standard deviation.[2] *See id.* Because counsel acknowledged the numbers within the jury pool were "good" and since fair-cross-section challenges do not apply to jury panels, we affirm the court's denial of Boyce's motion to continue trial as he failed to prove representation in the pool was "not fair and reasonable." *See id.*; *see also Mong*, 988 N.W.2d at 310; *State v. Love*, No. 23-1836, 2025 WL 1177455, at *7 (Iowa Ct. App. Apr. 23, 2025).

## III. Evidentiary Rulings

Boyce claims the trial court erred in admitting testimony from a nurse and paramedic who treated M.R. regarding statements she made to them. Boyce asserts these statements were inadmissible hearsay. The statements in question were the paramedic testifying that M.R. "described that she was hit and kicked all over her body, and . . . she was hit with a pistol"; and the treating nurse testifying M.R. "stated that she was kicked, she was hit, and she was choked when she

---

[2] The State points out that the calculation should actually be based on the 3.9% rate of African Americans among jury-eligible residents rather than the total population rate but agrees that distinction would not matter here since the pool satisfies even the higher rate. *See Lilly*, 930 N.W.2d at 304.

entered a home she was going to get her clothes from."  Boyce asserts these hearsay statements are inadmissible and "not relevant to any disputed issue."

We review the district court's rulings on admissibility, including hearsay and hearsay exceptions, "for the correction of legal error."  *See State v. Veverka*, 938 N.W.2d 197, 202 (Iowa 2020).

Hearsay is normally an inadmissible statement that "[t]he declarant does not make while testifying at the current trial . . . and [a] party offers into evidence to prove the truth of the matter asserted.  Iowa R. Evid. 5.801(c)(1)(2).  There are numerous exceptions to hearsay inadmissibility, the relevant one here being a "*[s]tatement made for medical diagnosis or treatment*," which "[i]s made for—and is reasonably pertinent to—medical diagnosis or treatment" and "[d]escribes medical history, past or present symptoms or sensations, or the inception of general cause of symptoms or sensations."  Iowa R. Evid. 5.803(4)(A)(B).

The rationale behind this exception is that statements to medical providers for the purpose of diagnosis or treatment are likely to be truthful, as a patient has an interest in correctly communicating their health issues.  *See State v. Smith*, 876 N.W.2d 180, 185 (Iowa 2016).  "Thus, the circumstances of statements made for diagnosis and treatment provide 'special guarantees of credibility' and justify the exception to the rule against hearsay."  *Id.* (quoting *State v. Hildreth*, 582 N.W.2d 167, 169 (Iowa 1998)).

Boyce's assertion that the testimony "was not relevant to any issue" is incorrect.  M.R.'s statements to the paramedic and nurse were relevant to the types of injuries she sustained.  This hearsay exception is meant to be offered for the truth of the matter asserted, which in this case was that M.R. was injured.  *See id.*

And "[n]ormally, the identity of the perpetrator of physical injuries is not understood to be necessary information for effective medical treatment . . . these statements generally lack the inherent reliability of statements by patients to doctors for medical diagnosis or treatment." *Id.* (citing *States v. Joe*, 8 F.3d 1488, 1494 (10th Cir. 1993); *Colvard v. Commonwealth*, 309 S.W.3d 239, 245–46 (Ky. 2010)).  But the record shows that M.R. did not identify Boyce when making these statements.  Accordingly, we affirm the court's admission of these statements as a hearsay exception for the purposes of medical treatment.[3]

## IV.    Sufficiency of Evidence

Boyce's claims as to the sufficiency of the evidence are limited to his assertion that the State failed to prove that he was the individual who caused injury to M.R.  Boyce also claims, "the evidence was insufficient to identify Boyce as the person that [M.R.] alleged was harassing her."  The following instructions were included in the jury instructions used at trial:

> With respect to Count I, the State must prove all the following elements of Willful Injury Causing Serious Injury:
> 1. On or about May 18, 2023, the defendant did an act which was not justified.
> 2. The defendant specifically intended to cause a serious injury to [M.R.].
> 3. The defendant's acts caused a serious injury to [M.R.] . . . .[4]

---

[3] Even if the admission of this testimony was in error, Boyce did not object to the testimony of the doctor, so any such challenged testimony is cumulative to that already in the record.

[4] A "serious injury" was defined to the jury as "a condition which cripples, incapacitates, weakens, or destroys a person's mental functions or a bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or extended loss or impairment of the function of any bodily part or organ."

With respect to Count II, the State must prove all of the following elements of Domestic Abuse Assault by Strangulation Causing Bodily Injury:

1. On or about the 18th day of May, 2023, the defendant did an act which was meant to cause pain or injury to [M.R.] or result in physical contact which was insulting or offensive to [M.R.].

2. The defendant had the apparent ability to do the act.

3. The defendant knowingly impeded the normal breathing of, or circulation of blood of [M.R.] by applying pressure to the throat or neck or by obstructing the nose or mouth of [M.R].

4. The act occurred between persons who are the parents of the same minor child.

5. The defendant's acts caused bodily injury to [M.R.] . . . .[5]

With respect to Count III, the State must prove all of the following elements of Harassment in the First Degree:

1. On or about the 18th day of May, 2023, the defendant communicated with [M.R.] by telephone, without a legitimate purpose, in a manner likely to cause her annoyance or harm.

2. The defendant communicated a threat to commit the crime of Willful Injury Causing Serious Injury, as defined in Instruction No. 19, or Intimidation With a Dangerous Weapon, as defined in Instruction No. 18.

3. The defendant did so with the specific intent to intimidate, annoy, or alarm [M.R.].

"We review sufficiency-of-evidence claims for correction of errors at law and will uphold the jury's verdict if it is supported by substantial evidence." *State v. Kieffer*, 17 N.W.3d 651, 655 (Iowa 2025).

Sufficiency-of-the-evidence challenges require us to consider all "the evidence in the light most favorable to the State, 'including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021) (quoting *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017)). In determining whether "the finding of guilt is supported by substantial evidence in the record," it must be shown the evidence

---

[5] "Bodily injury" was defined to the jury as "physical pain, illness, or any impairment of physical condition."

"would convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *Id.* (quoting *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018)).

Concerning the assault convictions, while there was no direct evidence that showed Boyce was the individual who inflicted M.R.'s injuries, there was sufficient circumstantial evidence. "Direct and circumstantial evidence are equally probative." *Id.* at 57 (quoting Iowa R. App. P. 6.904(3)(p)). Boyce was present in the house with M.R. at the time M.R. sustained injuries. Boyce's roommate personally witnessed the two together in the home and then later observed the room was "torn up" after he was trying to sleep. M.R. was observed to have no injuries when entering the home. Boyce also immediately left town following the incident, indicating a consciousness of guilt. *See Mong*, 988 N.W.2d at 314. And Boyce sent messages to M.R.'s phone describing her injuries and boasted about causing the same.

The "State need not discredit every other potential theory . . . drawn from circumstantial evidence," and we presume the factfinder resolved conflicting inferences. *Ernst*, 954 N.W.2d at 57 (citing *State v. Bentley*, 757 N.W.2d 257, 263 (Iowa 2008)). Sufficient evidence exists to support the convictions of willful injury causing bodily injury and domestic abuse assault by strangulation causing bodily injury.

As to the harassment conviction, Boyce asserts "the evidence was insufficient to identify Boyce as the person that [M.R] alleged was harassing her." Unlike the other convictions, there is direct evidence showing harassing behavior from Boyce. Officers were present during one of these phone calls and testified that M.R. identified Boyce as the person calling her. And admitted text messages

sent from a contact labeled with Boyce's name and corresponding to a phone number that Boyce used were available for the jury. Substantial evidence exists in the record to sustain the conviction of harassment in the first degree.

## V.      Sentencing

Boyce claims the district court abused its discretion by rejecting his request for probation and imposing consecutive sentences. We review the district court's sentencing decision for abuse of discretion. *State v. Barnes*, 791 N.W.2d 817, 827 (Iowa 2010).

> [S]entencing decisions of the district court are cloaked with a strong presumption in their favor. We will not reverse a sentence unless there is "an abuse of discretion or some defect in the sentencing procedure." A district court abuses its discretion when it exercises its discretion on grounds clearly untenable to an extent clearly unreasonable.

*State v. Duffield*, 16 N.W.3d 298, 302 (Iowa 2025) (internal citations omitted). When sentencing a criminal defendant, "[a] court 'should weigh and consider all pertinent matters . . . including the nature of the offense, the attending circumstances, defendant's age, character and propensities[,] and chances of his reform.'" *State v. Headley*, 926 N.W.2d 545, 550 (Iowa 2019) (alteration in original) (quoting *State v. Cupples*, 152 N.W.2d 277, 280 (Iowa 1967)); Iowa Code § 901.5.

The record of the sentencing hearing reflects that the district court "considered all pertinent matters and addressed both protection of the community and rehabilitation." *See State v. Peterson*, No. 24-0194, 2025 WL 271623, at *3 (Iowa Ct. App. Jan. 23, 2025). The district court stated it "considered all the sentencing options available . . . in Chapters 901, 902, 903, and 907 of the Iowa Code." The court also stated its sentencing judgment was based on a "maximum

opportunity for rehabilitation . . . [and] protect[ion] of the community from further offenses by you and others." The district court considered Boyce's age, prior criminal history, previous opportunities on probation, work history, and the attending circumstances of the crimes. The district court determined that the safety of the community outweighed rehabilitative benefits of probation. *See State v. Blauer*, No. 23-0966, 2024 WL 3290394, at *2 (Iowa Ct. App. July 3, 2024).

It is not enough that Boyce disagrees with the court's weighing of the sentencing factors and the sentence ultimately selected. *See State v. Gordon*, 998 N.W.2d 859, 863 (Iowa 2023) ("The test for whether a sentencing court abused its discretion is not whether we might have weighed the various factors differently."). Boyce must demonstrate an abuse of discretion by the district court in imposing consecutive prison sentences rather than ordering probation or imposing concurrent sentences. As he has failed to demonstrate an abuse of discretion, we affirm the imposed sentence.

**AFFIRMED.**